# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KAREN RENEE CHAVIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social )<br>Security, )<br>)<br>)<br>Defendant. ) | 1:11CV771 |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Karen Renee Chavis, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security denying her claims for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.[1] The Court has before it the certified administrative record and cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for a POD and DIB on October 20, 2009, and an application for SSI benefits on October 20, 2009; all of which alleged a disability onset date of September 28, 2009. (Tr. 118-126.)[2] The applications were denied initially and upon reconsideration. (*Id.* at 55-73.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 74.) Present at the February 23, 2011 hearing were Plaintiff, her attorney, and a Vocational Expert ("VE"). (*Id.* at 25-54.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 11-24.) On July 28, 2011 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-3.)

## II. FACTUAL BACKGROUND

Plaintiff was forty-five years old on the alleged disability onset date, had at least a high school education, and was able to communicate in English. (*Id.* at 23.)

## III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[2] Transcript citations refer to the administrative record.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The issue before the Court is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining

3

disability benefits under the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[4] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1) Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2) Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

---

[3] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

[4] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

(3) Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

(4) Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5) Whether the claimant is able to perform any other work considering both her residual functional capacity[5] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ reached the fifth step of the sequence, at which point she determined that Plaintiff was not disabled from September 28, 2009 through the date of the decision. (Tr. at 24.) The ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time since her alleged onset date of September 28, 2009. (*Id.* at 13.) The ALJ next found in step two that Plaintiff had severe impairments: degenerative disc disease, disc herniation, degenerative joint disease in the right knee, carpal tunnel syndrome, chronic obstructive pulmonary disorder, and hepatitis c. (*Id.* at 14.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or

---

[5] "Residual functional capacity" ("RFC") is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

medically equal to, one listed in Appendix 1. (*Id.* at 16.) At step four, the ALJ concluded that Plaintiff could no longer perform her past relevant work as a food service worker/dining room attendant and general helper. (*Id.* at 22.) At step five, the ALJ concluded that considering Plaintiff age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 23.)

## B. Residual Functional Capacity Determination

Prior to steps four and five, the ALJ determined Plaintiff's RFC based on the ALJ's evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (*Id.* at 16-22.) Based on the evidence as a whole, the ALJ determined that Plaintiff retained the RFC to perform sedentary work, except that Plaintiff could never climb ladders, ropes, scaffolds, ramps, or stairs. (*Id.* at 16.) She could never balance but could occasionally stoop, crouch, kneel, and/or crawl. (*Id.*) She could perform the frequent handling of objects and the frequent fingering of objects. (*Id.*) Plaintiff would have to avoid concentrated exposure to irritants such as fumes, odors, dust, and gases, and she would need to avoid concentrated exposure to chemicals, and also avoid concentrated exposure to moving machinery, as well as unprotected heights. (*Id.*) Last, Plaintiff was also restricted to performing simple, routine, and repetitive tasks. (*Id.*) In reaching a conclusion about Plaintiff's RFC, the ALJ considered the evidence, including Plaintiff's testimony, and found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity,

persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*Id.* at 17.)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff could not perform her past relevant work as a food service worker/dining room attendant and general helper. (*Id.* at 22.)

### D. Adjustment to Other Work

The claimant bears the initial burden of proving the existence of a disability. 42 U.S.C. §§ 423(d)(5), 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512, 416.202-03; *Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979). Once establishing at step four that she cannot do any work she has done in the past because of her severe impairments, the burden shifts to the Commissioner at step five to show jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education, and past work experience. *Hunter*, 993 F.2d at 35; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Plaintiff was 45 years old on her alleged disability onset date which she defined as a "younger individual age 45-49," with at least a high school education, and the ability to communicate in English. (Tr. 23.) The ALJ noted that transferability of job skills was not material because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) The ALJ found that based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and that Plaintiff was not disabled from September 28,

2009, the alleged onset date, through the date of decision. (*Id.* at 23-24.)

## V. ANALYSIS

Plaintiff raises two issues. First, Plaintiff contends that the ALJ erred in failing to give controlling weight to a treating source, Dr. Glenn Harris. (Docket Entry 17 at 6-8.) Second, Plaintiff argues that the ALJ erred in finding that Plaintiff has the RFC to perform sedentary work. (*Id.* at 8-11.) As explained below, these arguments lack merit.

### A. The ALJ's Decision to Give Less Than Controlling Weight to the Medical Opinion of Dr. Glenn Harris Is Supported by Substantial Evidence.

Plaintiff contends that the ALJ committed reversible error in failing to attribute controlling weight to her treating physician. (Docket Entry 17 at 6-8.) Plaintiff's treating physician, Dr. Glenn Harris, provided a medical source statement as to Plaintiff dated November 2, 2010. (Tr. 371-74.) In pertinent part, this statement limited Plaintiff to lifting and carrying less than five pounds, limited pushing and pulling, limited standing to no more than two hours in an eight hour workday, and included the need to alternate standing and sitting to relieve pain or discomfort. (*Id.*) The VE testified that such restrictions would essentially prohibit someone from working. (*Id.* at 51-52.) However, the ALJ ultimately afforded Dr. Harris' opinion "little weight," because it was neither supported by the objective medical record, nor by Dr. Harris' own treatment notes.[6]  (*Id.* at 21.)

---

[6] The ALJ discussed Dr. Harris repeatedly and at some length. (Tr. 18, 20-21.) At one point in his analysis, the ALJ attributes "great weight" to Dr. Harris' opinion, however, later the ALJ attributes "little weight" to it. (*Id.* at 21.) Transcription or similar errors are harmless if, notwithstanding the error, the ALJ gave adequate explanation of her findings elsewhere in her decision. *See, e.g., Wright v. Comm'r of Soc. Sec.*, 386 F. App'x 105, 109 (3d Cir. 2010) (ALJ's misstatements in written decision harmless error when regardless of them "ALJ gave an adequate explanation supported by substantial evidence in the record"); *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 265–66 (11th Cir. 2009)

Consequently, the ALJ did not adopt Dr. Harris' limitations.

Plaintiff contends that Dr. Harris's opinion is entitled to controlling weight. (Docket Entry 17 at 8.) Plaintiff argues that Dr. Harris' opinion is well-supported by the medical evidence on record and is not contradicted by any record evidence. (Docket Entry 17 at 8.) In support, Plaintiff notes that (1) she had lumbar spine surgery in January of 2011 but continues to suffer from low back and leg pain, (2) she continues to pursue pain management, including undergoing nerve root injections due to ongoing leg pain, and (3) her straight leg raise test was positive bilaterally. (*Id.* referencing Tr. 426-27.)

The "treating physician rule,"[7] 20 C.F.R. § 416.927(d)(2) generally provides more weight to the opinion of a treating source, because it may "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. § 416.927(d)(2).[8] But not all treating sources are created

---

(ALJ's erroneous reference to wrong medical reports harmless when he referred to reports "in two sentences" but "dedicate[d] two paragraphs" to correct reports, and decision conformed to medical evidence); *Taylor v. Astrue*, No. 4:07–CV–160–FL, 2009 WL 50156, at *10 (E.D.N.C. Jan.7, 2009) (ALJ's misstatement of claimant's RFC in one sentence of decision "akin to a typographical error and constitutes harmless error" given that ALJ correctly stated RFC elsewhere in opinion and it was "overwhelmingly supported by substantial evidence"). As explained above, and as readily apparent in the ALJ's decision, the limitations set forth in Dr. Harris' medical statement were inconsistent with Dr. Harris' own contemporaneous notes regarding Plaintiff's medical examinations and contradicted by other objective medical evidence on record. It is clear that the ALJ attributed little weight to Dr. Harris' medical statement and did so with good reason. Nothing in the record suggests that but for this error, this case would resolve differently. Any error here is harmless.

[7] Effective March 26, 2012, a regulatory change renumbered, but did not impact the substantive language of, the treating physician rule. 77 Fed. Reg. 10651-10657 (Feb. 23, 2012). Given that all material events in this action precede this nominal regulatory change, this Opinion and Recommendation will make use of the pre-March 26, 2012 citations.

[8] Social Security Ruling ("SSR") 96–2p provides that "Controlling weight may not be given to a

equal. An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* § 416.927(d)(2)-(6). These factors include: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.*

Significantly, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, must be both well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *Id.* § 416.927(d)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *accord Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. § 416.927(e).

The ALJ's decision to give "little weight" to Dr. Harris' opinion as set forth in the

---

treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, *Giving Controlling Weight to Treating Source Medical Opinions*. Yet, where "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight." *Id.* SSR 96-5p provides that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, *Medical Source Opinions on Issues Reserved to the Commissioner*. "[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored, and . . . the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." *Id.*

November 2, 2010 source statement is supported by substantial evidence. As the ALJ noted, and as Defendant correctly points out, Dr. Harris' opinion that Plaintiff could never lift over five pounds, could only stand two hours each workday, had limitations in reaching, and would need the option to periodically alternate between sitting and standing was not consistent with other evidence of record, including Dr. Harris' own treatment notes. (Tr. 21; Docket Entry 19 at 5.) The following evidence bears out this conclusion.

First, Alan Cohen, M.D. examined Plaintiff on November 19, 2009 in his capacity as a consultative examiner and that examination demonstrates that Plaintiff's impairments did not cause neurological abnormalities. (Tr. 316-19.) Plaintiff had normal sensation to touch and pain, normal proprioception, and normal deep tendon reflexes in her extremities. (*Id.* at 317.) Her musculoskeletal examination was normal, apart from some limited range of motion of her thoracolumbar spine, and she could sit, stand, squat, and walk without difficulty, and she also had normal muscle strength in her extremities. (*Id.* at 317 and 320.) Dr. Cohen determined that Plaintiff had a stable prognosis and opined that her ability to sit, stand, and handle objects was unimpaired and that her ability to move about, lift, carry, and maintain stamina was only mildly impaired. (*Id.* at 318.) As Defendant correctly points out, Dr. Cohen's objective medical findings undermine Dr. Harris' contrary conclusions, and support the ALJ's conclusion that Plaintiff can perform a limited range of sedentary work.[9]

---

[9] The Regulations define "sedentary work" as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which

11

Second, in March of 2011, about two and a half months after her discectomy, Plaintiff reported that her back felt better. (*Id.* at 424.) Plaintiff's treating neurosurgeon, David Kee, Jr., M.D., found that Plaintiff had a normal motor examination and normal ability to walk, despite her report that she did not experience significant relief of her left leg pain. (*Id.* at 425.) As Defendant points out, Dr. Kee did not identify clinical abnormalities that would prevent Plaintiff from performing the jobs identified by the VE. Dr. Harris' findings in his medical source statement were inconsistent with this other record evidence.

Third, Dr. Harris' findings in the medical source statement limiting Plaintiff to less than sedentary work—which consisted of a series of check boxes that Dr. Harris had marked without any additional narrative explanation—were not well-supported by objective medical findings. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) (stating that the better explanation a source provides for an opinion, the more weight the Commissioner gives that opinion). *See, e.g., Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986) (concluding that an RFC form unaccompanied by a thorough written report was of suspect reliability); *Owens v. Colvin*, No. 1:12–CV–367–FDW–DSC, 2013 WL 5356837, *8-9 (W.D.N.C. Sept. 24, 2013) (same).

Moreover, prior to completing the medical source statement, Dr. Harris only examined Plaintiff twice, in August and September 2010. (Tr. 408-09, 412-13.) Prior to that

---

> involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR §§ 404.1567(a), 416.967(a).

time, Plaintiff had not personally examined Plaintiff since February 2004, which is over five years before the alleged onset date in September 2009. (*Id.* at 245.) Otherwise, Lynn Sanford, F.N.P., an employee of Dr. Harris, was the person from Dr. Harris' office that examined Plaintiff. (*Id.* at 237-42.) In any event, Dr. Harris' and Ms. Sanford's examinations reveal only that Plaintiff had a limited range of motion of her lumbar spine. (*Id.* at 237, 239, 241, 408, 412, 416.) Consequently, the record, including Dr. Harris' own medical assessments, does not demonstrate a limitation to less than sedentary work as suggested in Dr. Harris' medical source statement. *Mastro*, 270 F.3d at 178 (concluding that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (citation omitted). For all these reasons, the undersigned concludes that the ALJ's decision to assign Dr. Harris' medical source opinion less than controlling weight is supported by substantial evidence.

### B. The ALJ's RFC Assessment and Credibility Assessment Are Supported by Substantial Evidence.

Next, Plaintiff asserts that the ALJ erred in her credibility assessment, which in turn led to an error in the ALJ's RFC determination that Plaintiff can perform sedentary work. (Docket Entry 17 at 8.) More specifically, Plaintiff contends that there is "clear evidence" that she was unable to lift more than five pounds even on an occasional basis, that she also requires the ability to change position at will to alleviate pain, and that she is limited in pushing and pulling with her upper extremities. (*Id.* at 9.) These limitations, Plaintiff contends, are inconsistent with the performance of sedentary work. (*Id.*)

In support of these claims, Plaintiff points to her testimony that she (1) is only able to drive in fifteen to twenty minute intervals due to back and leg pain (*id.* at 30), (2) that she stopped working due to muscle spasms and low back pain, (3) that she also began having leg pain in 2009 (*id.* at 32), (3) that she can only stand for fifteen to twenty minutes before taking a break due to leg pain and can only sit for ten minutes before changing position due to pain, (4) that she does not do any bending, stooping, or squatting, and that her ability to walk is extremely limited, (*id.* at 33), (5) that she has difficulty with fatigue due to hepatitis C (*id.* at 34), and (6) that she has difficulty with memory and concentration (*id.* at 36).

Plaintiff contends further that this testimony is consistent with the objective medical evidence of record because (1) she had "low back surgery" but still has persistent leg pain that has worsened since surgery, (2) she continues with pain management and, as of the hearing, was still taking Oxycodone for pain relief, and (3) that the record shows "a history of chronic and severe back and leg pain." (Docket Entry 17 at 11.) Finally, Plaintiff implies that the ALJ misapplied Fourth Circuit precedent by requiring objective evidence of disabling pain. (*Id.* citing *Hines v. Barnhart*, 453 F.3d 559, 563-64.)

The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. The first step requires the ALJ to determine if the plaintiff's medically documented impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4)

and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, at *3 (W.D.N.C. Nov. 18, 2010) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c)). "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* Moreover, SSR 96-8p requires that:

> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *5. Similarly, in determining the credibility of a claimant, SSR 96-7p, *Assessing the Credibility of an Individual's Statements*, instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96-7p, 1996 WL 374186, at *4. Importantly, an ALJ's credibility determination is also entitled to "substantial deference." *Sayre v. Chater*, NO. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished).

Here, the ALJ completed both steps of the *Craig* analysis. The ALJ initially considered the evidence of record and concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 17.) Then, the ALJ went on to perform the next step of the *Craig* analysis, concluding further that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (*Id.*) For the following reasons, these conclusions are well supported.

First, the objective evidence of record undermines Plaintiff's subjective complaints of disabling pain. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (stating the ALJ may consider objective medical evidence when making reasonable conclusions about intensity and persistence of a claimant's symptoms). As explained in greater detail in Part V.A. of this Recommendation, clinical findings undermine Plaintiff's assertions of disabling pain and functional limitations that prohibit sedentary work. For example, Dr. Cohen's examination report shows Plaintiff had normal sensation to touch and pain, normal muscle strength, no muscle tenderness or atrophy, and only minimal limitation of motion. (Tr. 317.) Nor did Dr. Kee identify clinical abnormalities preventing Plaintiff from performing sedentary jobs. (*Id.* at 425.) Plaintiff's December 2008 x-ray also revealed normal findings. (*Id.* at 221, 243.) The record is likewise without a relevant medical opinion—other than Dr. Harris', to which the ALJ reasonably attributed little weight—that Plaintiff is permanently disabled or treatment records indicating restrictions more significant than those set forth in the RFC. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (holding that a lack of physical

restrictions from a treating source tends against a finding of total disability); *Hilton-Williams v. Barnhart*, Civ. A. No. 7:05cv00674, 2006 WL 3099648, *3 (W.D.Va. Oct. 24, 2006) (unpublished) (finding that a mere diagnosis absent any evidence of actual functional limitations was insufficient to establish disability).

Second, the ALJ's well-supported findings demonstrate that Plaintiff's subjective complaints are undermined by her statements regarding her pain medication and, at times, her own conduct. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (providing that Commissioner will consider the type, dosage, effectiveness, and side effects of any medication a claimant takes to alleviate her pain or symptoms). For example, Plaintiff testified that her pain medication worked, that it took the edge off of her pain, and that she had no side effects. (Tr. 239, 41, 179.) Also, in January 2009, she complained of "unbearable" back pain, but continued to serve tables at a restaurant. (*Id.* at 239.) Plaintiff was ultimately referred to chiropractic care, but the record does not reveal whether she complied with this recommendation. (*Id.* at 241.) Nor does the record demonstrate that Plaintiff complained of or sought treatment for bilateral hand and wrist pain in 2009 or 2010. The ALJ explained that the record demonstrated a sporadic and minimal treatment history, as well as non-compliance, and that this was inconsistent with the claimant's allegations of disabling pain. (*Id.* at 21.) Plaintiff has not contested these particular findings.[10]

---

[10] *See, e.g., Flowers v. Apfel*, No. 98-2112, 1999 WL 150491, at *2 (4th Cir. 1999) (unpublished) (finding that a claimant's alleged limitations were not supported by the record when they were never reported to his treating physician); *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) ("Connett

The ALJ further found that Plaintiff reported no more than mild limitations in her activities of daily living and that these activities included (1) handling most of the household duties in her own home, including cleaning and cooking, with the help of her daughter, (2) assisting in the care of her ailing mother, her daughter, and five grandchildren, and (3) driving short distances. (*Id.* at 21, 30, 36-37, 45-46, 168, 170, 408.) The ALJ's decision to partially discount Plaintiff's allegations is supported by substantial evidence in the record.[11]

Third, as Defendant correctly notes, the ALJ did give significant credit to Plaintiff's subjective complaints in finding that she could not perform her past medium level work as a food service worker and general helper and, instead, limited her to an extremely reduced range of sedentary work. (*Id.* at 16, 22-23.) *See also Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) (concluding that by limiting claimant to sedentary work when the claimant's past work was heavy represented virtually "complete acceptance" of the claimant's symptoms and

---

asserted she spent 75 percent of her day lying down due to severe pain, the ALJ's decision rejected her testimony in part because she never reported this restriction to a physician."); *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("Edwards complained at the hearing of headaches, but the medical records contain few references to headache complaints; where the medical records do mention headache complaints, she was diagnosed with hypertension, and she responded well to the appropriate medication."); *Teal v. Colvin*, No. 1:11CV191 SNLJ/FRB, 2013 WL 1363727, *15 (E.D. Mo. March 18 2013) ("The undersigned notes that plaintiff testified that he spent the majority of his time sitting in a reclined position. However, there is no objective medical evidence substantiating plaintiff's need to do so. Further, the record shows that plaintiff never reported to any of his doctors that he needed to sit in a reclined position for sustained periods of time.").

[11] *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding that routine activities—attending church, visiting relatives, reading, watching T.V., cooking, cleaning the house, doing laundry and performing stretches recommended by chiropractor—were inconsistent with complaints of pain); *Jones v. Astrue*, No. 1:09cv430, 2011 WL 815610, *4 (W.D.N.C. Feb. 1, 2011) (affirming ALJ's credibility analysis, in part where "plaintiff acknowledged that she could care for her own personal needs and perform light household chores [which] further contradict[ed] her allegations of disabling pain") *adopted in* 2011 WL 815388 (W.D.N.C. Feb 28, 2011).

accords them appropriate weight). For example, Plaintiff testified that part of the reason she was disabled was due to Hepatitis C. (Tr. 34.) Although the evidence did not reflect any diagnosis or treatment of this impairment as of the onset date, beyond a diagnosis by the consultative examiner, Dr. Cohen, the ALJ gave Plaintiff the benefit of the doubt by diagnosing it as a severe impairment. (*Id.* at 14.) Due to the presumed associated nausea, fatigue, and weakness the ALJ consequently limited Plaintiff to the performance of simple, routine, and repetitive tasks away from concentrated exposure to moving machinery and unprotected heights. (*Id.* at 20-21, 316-19.)

Likewise, after discussing Plaintiff's allegations and testimony of breathing difficulties at length, the ALJ acknowledged that Plaintiff should avoid concentrated exposure to both chemicals and irritants. (*Id.* at 20, 310-320, 380-81, 394, 397, 404, 408, 416, 418-19, 422.) Additionally, in February of 2011, Plaintiff complained of worsening carpal tunnel syndrome, was diagnosed with CTS, and prescribed a wrist splint. (*Id.* at 421-22.) Consequently, the ALJ limited her to only frequent handling and fingering of objects. (Tr. 20.) For all these reasons, the ALJ's decision to partially discount Plaintiff's credibility is supported by substantial evidence.

Finally, any argument that the ALJ rejected her complaints of pain solely because of a lack of objective medical evidence must also fail. As explained in detail above, the ALJ did not discount Plaintiff's complaints of pain *solely* because of a lack of objective medical evidence. Rather, one reason the ALJ discounted Plaintiff's complaints in part was because the medical evidence of record *contradicted* Plaintiff's allegations. (Tr. 17 "The claimant

19

alleged and testified that she was unable to work due to debilitating back, neck, and leg pain. However, her allegations are inconsistent with the objective evidence of record.") (emphasis added)) *See also Craig*, 76 F.3d at 595 ("[C]laimant's allegations about her pain may not be discredited *solely* because they are not substantiated by objective evidence of the pain itself . . . .") (emphasis added). "[T]he only analysis which *Craig* prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence." *Grubby*, 2010 WL 553677, at *10 (citation omitted). In short, both the ALJ's credibility analysis and RFC assessment are supported by substantial evidence.

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 16) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 18) be **GRANTED**, and the final decision of the Commissioner be upheld.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
March 4, 2013